UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARI McINTOSH, KELLIE WALKER, TIFFANY DELOATCH AND ARIEL FLICKER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INQUISITHEALTH, INC., PYX HEALTH, INC. and DR. ASHWIN PATEL,<br><br>Defendants. | Case No.  2:24-cv-551<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Shari McIntosh, Kellie Walker, Tiffany DeLoatch and Ariel Flicker (collectively "Representative Plaintiffs") on behalf of themselves and all others similarly situated, as class representatives, by and through their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege upon knowledge, and information and belief, as follows:

## NATURE OF ACTION

1.       This is a collective and class action brought by the Representative Plaintiffs, on their own behalf and on behalf of the proposed collective and classes identified below (the Representative Plaintiffs and the similarly situated members of the proposed collective and classes are referred to collectively as "Plaintiffs").

2.       Defendants InquisitHealth, Inc. ("Inquisit"), Pyx Health, Inc. ("Pyx") and Dr. Ashwin Patel ("Dr. Patel") were the Plaintiffs' employer.

3.       Defendants have generated significant profits for their owners by misclassifying their workforce as independent contractors.

4.      The Representative Plaintiffs, and all Plaintiffs, were employees of Defendants who were misclassified as independent contractors.

5.      As a result of Defendants' common, unlawful practice of misclassifying non-exempt employees as independent contractors, the Plaintiffs were not compensated for all compensable time that they worked, and they were never paid overtime premiums.

6.      Upon information and belief, Defendants maintained a policy of refusing to pay any hourly paid worker overtime premiums.

7.      Defendants also failed to comply with multiple obligations to their employees that are governed by state laws.

8.      In addition, when Defendants terminated the employment of most of the Plaintiffs, on or about November 30, 2023, or within ninety days of that date, they failed to comply with their obligations to provide the notice and severance required by the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, PL. 2007, c.212,C.34:21-2, as amended ("New Jersey WARN Act").

9.      The putative Collective Class and Rule 23 Classes of employees are similarly situated to the Representative Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and have suffered the same violations pursuant to Defendants' common policies and practices.

## PARTIES

10.      Individual and Representative Plaintiff Kellie Walker was employed by Defendants from August 2021 until she was involuntarily terminated on December 12, 2023.

11.      Plaintiff Walker worked for Defendants in New York from February 26, 2021 through October 9, 2023.  Plaintiff Walker is currently a resident of California and she worked for

Defendants in California from October 9, 2023 until Defendants terminated her employment on December 12, 2023.

12.    Defendants initially paid Plaintiff Walker $15.00 per hour.  Defendants increased Ms. Walker's hourly rate to $24.00 per hour.

13.    Individual and Representative Plaintiff Shari McIntosh was employed by Defendants from September 2022 until she was involuntarily terminated on November 30, 2023.

14.    Plaintiff McIntosh is a resident of New Jersey and she worked for Defendants in New Jersey.

15.    Defendants initially paid Plaintiff McIntosh $15.00 per hour.  Defendants increased Ms. McIntosh's hourly rate to $17.00 per hour.

16.    Individual and Representative Plaintiff Tiffany DeLoatch was employed by Defendants from December 2021 until she was involuntarily terminated on December 12, 2023.

17.    Plaintiff DeLoatch is a resident of North Carolina.

18.    Defendants initially paid Plaintiff DeLoatch $15.00 per hour.  Defendants increased Ms. DeLoatch's hourly rate to $16.00 per hour.

19.    Individual and Representative Plaintiff Ariel Flicker was employed by Defendants from June 20, 2022 until June 2023.

20.    Plaintiff Flicker is a resident of Oregon.

21.    Defendants initially paid Plaintiff Flicker $15.00 per hour.  Defendants increased Ms. Flicker's hourly rate to $17.00 per hour.

22.    Defendants Inquisit is a Delaware corporation with its principal place of business at 41 Grand Avenue, Suite 102, River Edge, New Jersey.

23.    Defendants Inquisit required Plaintiffs to execute a "Consulting Agreement."  The

Consulting Agreement confirms that Inquisit operates from 41 Grand Avenue, Suite 102, River Edge, New Jersey. The Consulting Agreement also states:

> This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of New Jersey without reference to the conflict of law provisions thereof. Consultant hereby irrevocably submits to and acknowledges and recognizes the jurisdiction of the courts of the State of New Jersey, or if appropriate, a federal court located in New Jersey (which courts, for purposes of this Agreement, are the only courts of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or the subject matter hereof.

A sample of Inquisit's Consulting Agreement is attached hereto as Attachment 1.

24.     Defendant Pyx is a corporation with its principal place of business at 4625 E. Fort Lowell Road, Suite 101, Tucson, AZ.

25.     Upon information and belief, Defendant Pyx is the successor of Defendant Inquisit and is responsible for Defendant Inquisit's liabilities.

26.     Defendant Dr. Patel is an individual who is a resident of New Jersey.

27.     At all relevant times, Dr. Patel controlled the operations of Defendants and their employment of Plaintiffs.

28.     Upon information and belief, Dr. Patel decided to classify the Plaintiffs as independent contractors.

29.     Dr. Patel had, and exercised, the authority to determine the compensation paid to employees of Inquisit, including the Plaintiffs.

30.     Dr. Patel had, and exercised, the authority to hire and fire employees of Inquisit, including the Plaintiffs.

31.     Dr. Patel had, and exercised, the authority to set the policies of Inquisit which governed the employment of the Plaintiffs.

32. At all relevant times, Dr. Patel was an "employer" of Plaintiffs within the meaning of the FLSA and applicable state laws.

33. Upon information and belief, Defendants operated as a joint employer with respect to the employment of Plaintiffs.

## JURISDICTION AND VENUE

34. This court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

35. In addition, the court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq.*

36. Inquisit's and Pyx's annual sales exceed $500,000 and each has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

37. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367, in that the state law claims are so closely related to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United States Constitution.

38. This court has personal jurisdiction over the Defendants because they routinely transact business in New Jersey and Defendants' Consulting Agreement specifies that disputes must be resolved in this court.

39. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees within this judicial district.  In addition, Defendant Inquisit maintains its headquarters in New Jersey.

<u>**FACTUAL ALLEGATIONS**</u>

<u>**Defendants Misclassified Their Employees As Independent Contractors**</u>

40.    According to a January 17, 2024 press release "InquisitHealth is a New Jersey-based population health management company that leverages a remote workforce of peers to help patients overcome social determinants of health (SDoH) challenges and better manage chronic conditions."

41.    Dr. Ashwin Patel is co-founder of Inquisit and a current employee of Pyx.

42.    Upon information and belief, Defendants Inquisit and Dr. Patel received significant compensation from their operation of Inquisit's business and the merger of the Inquisit's business into Pyx.

43.    Pyx claims to be "the leading social health platform solving loneliness."

44.    According to an August 15, 2023, press release, Pyx generates significant revenue by "solving loneliness."  Pyx's press release touts' three-year revenue growth of 1,054%.

45.    Pyx announced its acquisition of Inquist on January 17, 2024.

46.    Since at least 2017, Inquisit and Dr. Patel have employed hundreds of hourly paid workers whom they misclassified as independent contractors.

47.    Plaintiffs were not in business for themselves.

48.    Plaintiffs were required to personally perform the job duties that Defendants assigned to them.

49.    Defendants employed the Plaintiffs in hourly paid positions, including "Peer Navigator," "Outreach Coordinator," "Operations Coordinator" and positions with similar titles.

50.    Defendants' primary business is to provide "peer mentoring" services to individuals

who are experiencing health issues, especially chronic health conditions (the individuals who are offered, and receive, services from Defendants are referred to as "Customers").

51.    The Plaintiffs are integral to Defendants' business.

52.    The Plaintiffs were required to complete an application for employment with Defendants.

53.    Defendants' Managers interviewed Plaintiffs and then offered them "Consulting Agreements."

54.    Defendants required all Plaintiffs to complete approximately three days of mandatory training.

55.    Outreach Coordinators' primary job duty was to call potential Customers and recruit them to enroll in Defendants' programs.

56.    Peer Navigators' primary job duty was to communicate with Customers who enrolled in Defendants' programs.

57.    The Plaintiffs did not have discretion to decide how to perform their job duties.

58.    Defendants closely supervised all Plaintiffs.

59.    Defendants tracked various "metrics" that were used to manage Plaintiffs' performance of their job duties.  For example, Outreach Coordinators were expected to obtain at least 1 enrollment for every 2.65 hours that they reported working.

60.    Defendants dictated the minimum and maximum length of calls that Plaintiffs could make on its behalf.

61.    Defendants would discipline and terminate Plaintiffs who failed to meet their "metrics."

62.    Defendants dictated the words that Plaintiffs were required to say to potential and

actual Customers. Defendants mandated that Plaintiffs follow scripts provided by Defendants when interacting with Customers.

63. Defendants' Managers would monitor calls made by Plaintiffs.

64. If Plaintiffs deviated from Defendants' scripts, they were subject to discipline, including verbal warnings, being removed from work assignments and termination.

65. Defendants required Plaintiffs to participate in regular "touch base" meetings and team meetings.

66. Defendants' Managers conducted "call reviews" in which they would critique Plaintiffs and direct them on how to conduct calls in the future.

67. Plaintiffs were required to participate in "performance reviews" conducted by Defendants' Managers.

68. Defendants set the pay of Plaintiffs.

69. In most cases, Defendants paid Plaintiffs based on an hourly rate.

70. Defendants would track some of the time Plaintiffs worked. Time was categorized as "idle" or "productive." Defendants would discipline Plaintiffs for being paid for "idle" time.

71. Defendants specified the hourly rate they would pay Plaintiffs in their Consulting Agreement.

72. Defendants' Consulting Agreement (Attachment 1) prohibited Plaintiffs from performing similar work for others. The Consulting Agreement states: "During the Consultation Period (as defined below) and for a period of twelve (12) months thereafter, the Consultant shall not engage in any activity that has a conflict of interest with the Company, including any competitive employment, business, or other activity, and he shall not assist any other person or organization that competes, or intends to compete, with the Company."

73.     In approximately January 2022, Plaintiff Walker was working for Defendants as an Operations Coordinator and she was classified as an independent contractor.  Plaintiff Walker asked to be classified as a W-2 employee, but she was told she would have to work 45 to 50 hours per week to be classified as an employee.

74.     In April 2022, Plaintiff Walker reiterated to Dr. Patel that she was legally entitled to be classified as an employee and she was eligible for benefits provided to employees, including the paid family leave mandated by New York law. Plaintiff Walker emailed Dr. Patel legal support for her position.

75.     In June 2022, Defendants reclassified Plaintiff Walker as an employee.

76.     Plaintiff Walker's job duties and relationship with Defendants did not change when her classification was changed from independent contractor to employee.

77.     As discussed below, whether Plaintiff Walker was classified as an independent contractor or an employee, Defendants failed to pay her overtime premiums when she worked more than forty hours in a workweek.

**Defendants Failed to Compensate Its Employees for All Hours Worked and Did Not Pay Overtime Premiums**

78.     Plaintiffs regularly performed work for which Defendants did not compensate them.

79.     Plaintiffs were required to track and report certain working time in Defendants' "TimeDoctor" system.

80.     Defendants maintained policies that caused Plaintiffs to routinely work "off the clock."

81.     For example, Plaintiff Walker was required to devote time to responding to Slack messages.  Defendants did not allow Plaintiff Walker to be paid for this time.

82.     Defendants' "metrics" caused Plaintiffs to perform work "off the clock" that they did not record because they knew they would be disciplined or terminated.

83.     Plaintiffs would regularly spend time preparing for calls, but they were not permitted to record this time and were not paid for this time.

84.     For example, Plaintiff McIntosh regularly took notes from her calls.  Defendants did not compensate McIntosh for the time she spent inputting her notes in Defendants' systems.

85.     Plaintiff McIntosh was disciplined for attempting to correct her time records to include time that she had worked "off the clock."  Ms. McIntosh was reprimanded on Slack and was called into a huddle for attempting to be paid for time she had worked.

86.     Defendants maintained a strict policy of not paying Plaintiffs overtime premiums.

87.     For example, during the week of October 16 to October 22, 2022, Plaintiff Walker reported working 48.5 hours.  She also worked at least three additional hours "off the clock." Defendants paid Ms. Walker for 48.5 hours at her straight time rate.

88.     By way of further example, during the week of September 4, to September 10, 2022, Plaintiff Walker reported working 53.5 hours.  She also worked at least three additional hours "off the clock."  Defendants paid Ms. Walker for 53.5 hours at her straight time rate.

89.     By way of further example, during the week of November 26, 2023 to December 2, 2023, Plaintiff Walker reported working 46.5 hours.  She also worked at least three additional hours "off the clock."  Defendants paid Ms. Walker for 46.5 hours at her straight time rate.

**Defendants Failed to Provide Compliant Pay Stubs to Its Employees**

90.     Defendants routinely misled Plaintiffs about their rates of pay.

91.     Defendants did not furnish Plaintiffs with statements with each payment of wages that accurately specified the dates and times worked covered by the payment, the rate of pay or

other information that would allow Plaintiffs to determine whether they were paid appropriately.

92.    As a result, Plaintiffs did not know how precisely their pay was being calculated, and were thus deprived of information that could be used to challenge and prevent the theft of their wages.

**Defendants Often Delayed Payment of Wages**

93.    Defendants would pay Plaintiffs approximately once per month.

94.    On many occasions, Defendants paid Plaintiffs less frequently than once per month.

**Defendants Made Improper Deductions from Plaintiffs' Wages**

95.    Defendants paid Plaintiffs using a service called "Bill.com."

96.    Defendants routinely charged Plaintiffs fees to receive their compensation, designated as an "Instant Transfer fee."

97.    Defendants often delayed payments of wages to Plaintiffs and further delayed those payments if the Plaintiff did not pay the "Instant Transfer fee."

**Defendants Terminated Most Plaintiffs' Employment Without Notice**

98.    On or about November 30, 2023, and within ninety days of that date, Defendants terminated the employment of hundreds of Plaintiffs without advance notice.

99.    All Plaintiffs reported into Inquisit's headquarters in River Edge, New Jersey.

100.    Prior to November 30, 2023, Dr. Patel and others caused the Plaintiffs to believe they would be employed by Pyx after the acquisition of Inquisit was completed.

101.    Plaintiffs were terminated by Defendants without cause and without notice.

102.    Upon information and belief, Pyx recognized that Inquisit's and Dr. Patel's classification of Plaintiffs as Independent Contractors was unlawful.

103.    On December 4, 2023, Dr. Patel emailed Inquisit employees and attached a "Frequently Asked Questions" document that includes the Pyx Health logo. That document states:

12. Can I stay on as a contract employee?

a. At Pyx Health, we believe that our work is more than a job, and it is important to us to continue to cultivate comradery and inclusivity amongst a culture we are proud of. An important element of this is being able to invest in the humans that choose to take part in the work and mission of this company. This is why Pyx Health believes in the W-2 model for employment, to ensure we can provide the best benefits offerings possible for the company. Therefore, we do not accept contract employment in our Compassionate Support Center, at this time.

104.     Despite knowing that Plaintiffs were misclassified, Defendants tried to again take advantage of this misclassification by terminating Plaintiffs without the notice and severance they were entitled to as employees.

**Defendants' Violations Were Willful**

105.     Defendants' misclassification of Plaintiffs as independent contractors, and their violations of the FLSA and applicable state laws, was willful.

106.     Due to Defendants' misrepresentations to Plaintiffs of the nature of their relationship with Defendants, and their failure to post notices required by the FLSA, Plaintiffs were prevented from learning of and exercising their rights as employees under the FLSA. As a result, the FLSA statute of limitations should be equitably tolled to allow Plaintiffs and other similarly situated employees to recover for FLSA violations beginning on January 1, 2017.

## FLSA COLLECTIVE ACTION ALLEGATIONS

107.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

108.     Defendants employed Plaintiffs during the three year period preceding the filing of this Complaint (the "Collective Class Period").

109.    Defendants classified Plaintiffs and Members of the Collective Class as non-exempt for the purposes of the FLSA, paying them an hourly wage.

110.    Upon information and belief, there are more than 100 former Peer Navigators, Outreach Coordinators and Operations Coordinators similarly situated to the Representative Plaintiffs who were denied overtime compensation.

111.    The Representative Plaintiffs represent other Peer Navigators, Outreach Coordinators and Operations Coordinators and are acting on behalf of Defendants' former Peer Navigators, Outreach Coordinators and Operations Coordinators' interests, as well as their own interests in bringing this action.

112.    Defendants unlawfully forced Plaintiffs and all individuals employed as Peer Navigators, Outreach Coordinators and Operations Coordinators to work off the clock.

113.    At all times during the Collective Class Period, Defendant, as a matter of common policy and/or practice, has not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

114.    The Representative Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

> **Collective Class:** All individuals employed by Defendants in hourly paid positions (including as Peer Navigators, Outreach Coordinators and Operations Coordinators) at any point during the Collective Class Period who earned but were not paid overtime premiums for all hours worked over 40 in a work week.

115.    Specifically, the Collective Class is further defined as involving claims for unpaid overtime compensation.

116.    As such, the Representative Plaintiffs and the Collective Class suffered damages for unpaid earned overtime wages under the FLSA during the Collective Class Period.

117.    Defendants were aware or should have been aware that the law required them to pay non-exempt employees, including the Representative Plaintiffs and the Collective Class, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

118.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to the Representative Plaintiffs and the Collective Class.

## **RULE 23 CLASS ALLEGATIONS**

### **(Violations of State Wage and Hour Laws)**

119.    Numerosity: Each of the Proposed California, New Jersey, New York, North Carolina and Oregon Classes (referred to as the "State Wage and Hour Law Classes") are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 30 Peer Navigators, Outreach Coordinators and Operations Coordinators similarly situated to the Representative Plaintiffs in each of the State Wage and Hour Law Classes who were denied overtime compensation and experienced the other violations discussed herein who are members of each of the State Wage and Hour Law Classes.

120.    Typicality: The Representative Plaintiffs' claims are typical of those of the Proposed Classes. The Representative Plaintiffs are informed and believe that the Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein.

121.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

122.    Adequacy: The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed State Wage and Hour Law Classes and have retained counsel experienced in complex class and collective action litigation.

123.    Commonality: Common questions of law and fact exist to all members of the Proposed State Wage and Hour Law Classes and predominate over any questions solely affecting individual members of the Proposed State Wage and Hour Law Classes, including but not limited to:

    a.    Whether Defendants unlawfully failed to pay overtime premiums for all hours worked over 40 in a workweek;

    b.    Whether Defendants unlawfully failed to pay the full amount of wages due to Plaintiffs in the State Wage and Hour Law Classes as frequently as required by state law in the Class Member's home state (where applicable);

    c.    Whether Defendants failed to provide complete and accurate wage statements as required by state law in the Class Member's home state (where applicable);

    d.    Whether Defendants breached express or implied promises to pay Plaintiffs their hourly rates for all hours worked and to provide notice before terminating Plaintiffs;

    e.    Whether those violations were pursuant to a common policy or practice applicable to all Class Members;

    f.    The proper measure of damages sustained by the members of the Proposed State Wage and Hour Law Classes; and

    g.    Whether Defendants' actions were "willful."

124.    The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the classes would result in inconsistent

or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

125.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed State Wage and Hour Law Classes predominate over any questions affecting only individual members of the Proposed State Wage and Hour Law Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Proposed State Wage and Hour Law Classes the wages and wage statements to which they are entitled. The damages suffered by the individual Proposed State Law Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

126.    Plaintiff intends to send notice to all members of the Proposed State Wage and Hour Law Classes to the extent required by Rule 23. The names and addresses of the Proposed State Law Class members are available from Defendants.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW JERSEY CLASS ALLEGATIONS

127.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

128.    Plaintiff McIntosh brings this action on behalf of herself and similarly situated current and former employees of Defendants who resided in New Jersey, accepted offers of employment from Defendants in New Jersey, were paid by Defendants in New Jersey and/or were

treated as New Jersey employees by Defendants, pursuant to Federal Rule of Civil Procedure 23 to remedy violations of New Jersey Wage and Hour Law ("NJWL"), N.J.S.A. § 34:11-56a, *et seq.* and the supporting New Jersey Department of Labor and Workforce Development regulations and Defendants' breaches of contract.

129.    In New Jersey, employers must: (1) pay their employees the mandatory minimum wage under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a4; and (2) pay their employees "for all hours worked" under the NJWHL, N.J.A.C. 12:56-5.1. "Hours worked" includes all time that employers require their employees to "be at his or her place of work." N.J.A.C. 12:56-5.2(a)

130.    Plaintiff McIntosh seeks to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed New Jersey Wage and Hour Class:** All individuals employed by Defendants who resided in New Jersey, accepted offers of employment from Defendants in New Jersey, and/or were paid by Defendants in New Jersey and worked as Peer Navigators, Outreach Coordinators and Operations Coordinators, at any point during the New Jersey Class Period who earned but were not paid required straight time wages and overtime premiums for hours worked over 40 in a work week, or were not paid the full amount of wages due to them at least twice during each calendar month, on regular paydays, who were not issued accurate wage statements, and who were damaged by Defendants breach of their promise(s) to pay Plaintiffs for all hours worked.

131.    Specifically, the New Jersey Class is further defined as involving: (i) claims for unpaid straight time and overtime for Defendants' practice of forcing Plaintiffs who are members of the New Jersey Class ("New Jersey Plaintiffs") to work "off the clock,"  (ii) claims for failure to pay the full amount of wages due to New Jersey Plaintiffs at least twice during each calendar month, on regular paydays; (iii) claims for wage statement violations for Defendants' failure to provide New Jersey Plaintiffs with accurate wage statements on each payday that included the information required by the NJWPL, including the correct number of hours worked during the pay period; (iv)

claims for unlawful deductions from wages; and (v) claims for breach of contract and breach of implied contract related to Defendants' failure to pay Plaintiffs for all hours worked.

132.     Further, Defendants have violated the NJWHL (N.J.S.A. 34:11-56a(4)) by failing to pay New Jersey Plaintiffs at least one and one-half times their regular rate of pay for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

133.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

134.     Plaintiff Walker brings this action on behalf of herself and similarly situated current and former employees of Defendants who resided in New York and/or performed work for Defendants in New York pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 19, §§ 190, 195, 650, et seq., and the supporting New York State Department of Labor Regulations.

135.     Plaintiff Walker seeks to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

**Proposed New York Class:**  All individuals employed by Defendants who resided in New York, accepted offers of employment from Defendants in New York, were paid by Defendants in New York and/or were treated as New York employees by Defendants and worked as Peer Navigators, Outreach Coordinators and Operations Coordinators, at any point during the New York Class Period who earned but were not paid required straight time wages and overtime premiums for hours worked over 40 in a work week, or were not paid the full amount of wages due to them at least twice during each calendar month, on regular paydays and who were not issued accurate wage statements, and who were damaged by Defendants breach of their promise to pay Plaintiffs for all hours worked.

136.    Specifically, the New York Class is further defined as involving: (i) claims for unpaid straight time and overtime for Defendants' practice of forcing Plaintiffs who are members of the New York Class ("New York Plaintiffs") to work "off the clock;" (ii) claims for failure to pay the full amount of wages due to New York Plaintiffs, on regular paydays, at the intervals required by the NYLL; (iii) claims for wage notice and wage statement violations for Defendants' failure to provide New York Plaintiffs with accurate wage statements on each payday that included the information required by the NYLL, including the correct number of hours worked during the pay period; (iv) claims for unlawful deductions from wages; and (v) claims for breach of contract and breach of implied contract related to Defendants' failure to reimburse Plaintiffs for expenses they incurred in connection with the performance of their duties.

137.    Further, Defendants have violated the NYLL New York Labor Law ("NYLL"), Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations by failing to pay New York Plaintiffs at least one and one-half times their regular rate of pay for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

**FEDERAL RULE OF CIVIL PROCEDURE**
**RULE 23 NORTH CAROLINA CLASS ALLEGATIONS**

138.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

139.    Plaintiff DeLoatch brings this action on behalf of herself and similarly situated current and former employees of Defendants who resided in North Carolina and/or performed work for Defendants in North Carolina pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the North Carolina Law.

140.    Plaintiff DeLoatch seeks to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed North Carolina Class:**    All individuals employed by Defendants who resided in North Carolina, accepted offers of employment from Defendants in North Carolina, were paid by Defendants in North Carolina and/or were treated as North Carolina employees by Defendants and worked as Peer Navigators, Outreach Coordinators and Operations Coordinators, at any point during the North Carolina Class Period who earned but were not paid required straight time wages and overtime premiums for hours worked over 40 in a work week, or were not paid the full amount of wages due to them at least twice during each calendar month, on regular paydays and who were not issued accurate wage statements, and who were damaged by Defendants breach of their promise to pay Plaintiffs for all hours worked.

141.    Specifically, the North Carolina Class is further defined as involving: (i) claims for unpaid straight time and overtime for Defendants' practice of forcing Plaintiffs who are members of the North Carolina Class ("North Carolina Plaintiffs") to work "off the clock;" (ii) claims for failure to pay the full amount of wages due to North Carolina Plaintiffs, on regular paydays, at the intervals required by North Carolina law ; (iii) claims for wage notice and wage statement violations for Defendants' failure to provide North Carolina Plaintiffs with accurate wage statements on each payday that included the information required by North Carolina law.

142.    Further, Defendants have violated North Carolina law by failing to pay North Carolina Plaintiffs at least one and one-half times their regular rate of pay for all hours worked over 40 during the class period pursuant to the same illegal practices and policies alleged above.

## <u>FEDERAL RULE OF CIVIL PROCEDURE</u><br><u>RULE 23 OREGON CLASS ALLEGATIONS</u>

143.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

144.    Plaintiff Flicker  brings this action on behalf of herself and similarly situated current and former employees of Defendants who resided in Oregon and/or performed work for Defendants in Oregon pursuant to Federal Rule of Civil Procedure 23 to remedy violations of

Oregon law.

145.   Plaintiff Flicker seeks to proceed as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined Class:

> **Proposed Oregon Class:**   All individuals employed by Defendants who resided in
> Oregon, accepted offers of employment from Defendants in Oregon, were paid by
> Defendants in Oregon and/or were treated as Oregon employees by Defendants and
> worked as Peer Navigators, Outreach Coordinators and Operations Coordinators, at any
> point during the Oregon Class Period who earned but were not paid required straight time
> wages and overtime premiums for hours worked over 40 in a work week, or were not
> paid the full amount of wages due to them at least twice during each calendar month, on
> regular paydays and who were not issued accurate wage statements, and who were
> damaged by Defendants breach of their promise to pay Plaintiffs for all hours worked.

146.   Specifically, the Oregon Class is further defined as involving: (i) claims for unpaid

straight time and overtime for Defendants' practice of forcing Plaintiffs who are members of the

Oregon Class ("Oregon Plaintiffs") to work "off the clock;" (ii) claims for failure to pay the full

amount of wages due to Oregon Plaintiffs, on regular paydays, at the intervals required by Oregon

law; (iii) claims for wage notice and wage statement violations for Defendants' failure to provide

Oregon Plaintiffs with accurate wage statements on each payday that included the information

required by Oregon law.

147.   Further, Defendants have violated Oregon law by failing to pay Oregon Plaintiffs

at least one and one-half times their regular rate of pay for all hours worked over 40 during the

class period pursuant to the same illegal practices and policies alleged above.


148.

## NEW JERSEY WARN ACT CLASS ALLEGATIONS

149.   Plaintiffs reallege and incorporates by reference all allegations in all preceding

paragraphs.

150.    Representative Plaintiffs Walker, McIntosh and DeLoatch[1] (the "WARN Representative Plaintiffs") bring the ___ Claim for Relief for violation of the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act, PL. 2007, c.212, C.34:21-2, as amended, (the "New Jersey WARN Act") on behalf of a class of similarly situated persons pursuant the New Jersey WARN Act and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked for Defendants and who were terminated without cause on or about November 30, 2023, and within 90 days of that date (the "NJ WARN Class").

151.    The persons in the NJ WARN Class are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

152.    Upon information and belief, the identity of the members of the NJ WARN Class and the recent residence address of each of the NJ WARN Class Members is contained in the books and records of Defendants.

153.    Upon information and belief, the rate of pay and benefits that were being paid by Defendants to each NJ WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

154.    Common questions of law and fact exist as to members of the NJ WARN Class, including, but not limited to, the following:

      a.    whether the members of the NJ WARN Class were employees of Defendants;

      b.    whether Defendants unlawfully terminated the employment of the members of the NJ WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the New Jersey

---

[1] Representative Plaintiff Flicker resigned from her employment and is not asserting WARN Act claims.

WARN Act; and

c.  whether Defendants unlawfully failed to pay the Class members 60 days

wages and benefits as required by the New Jersey WARN Act.

155.    The WARN Representative Plaintiffs' claims are typical of those of the NJ

WARN Class.  The WARN Representative Plaintiffs, like other NJ WARN Class members, were

employees of Defendants and were terminated on or about November 30, 2023, without cause.

156.    The WARN Representative Plaintiffs will fairly and adequately protect the interests

of the NJ WARN Class.

157.    The WARN Representative Plaintiffs have retained counsel competent and

experienced in complex class actions on behalf of employees, including the New Jersey WARN

Act, and employment litigation.

158.    Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3)

because questions of law and fact common to the Class predominate over any questions affecting

only individual members of the Class, and because a class action is superior to other available

methods for the fair and efficient adjudication of this litigation – particularly in the context of New

Jersey WARN Class Act litigation, where individual plaintiffs may lack the financial resources to

vigorously prosecute a lawsuit in federal court against corporate defendants, and damages suffered

by individual NJ WARN Class members are small compared to the expense and burden of

individual prosecution of this litigation.

159.    Concentrating all the potential litigation concerning the New Jersey WARN Act

rights of the members of the Class in this Court will obviate the need for unduly duplicative

litigation that might result in inconsistent judgments, will conserve the judicial resources and the

resources of the parties and is the most efficient means of resolving the New Jersey WARN Act

rights of all the members of the Class.

160.    The WARN Representative Plaintiffs intend to send notice to all members of the NJ WARN Class to the extent required by Rule 23.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation
under the Fair Labor Standards Act)
(On Behalf of All Plaintiffs)**

161.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

162.    The Representative Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  The Representative Plaintiffs' written consent forms have been filed with the Court (through ECF).  The Representative Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as opt-in plaintiffs.

163.    At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

164.    At all relevant times, Defendants employed and continue to employ employees, including the Collective Class members.

165.    At all relevant times, upon information and belief, Defendants each had gross annual operating revenues in excess of $500,000.00.

166.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

167.    During their employment with Defendants, within the applicable statute of limitations, Plaintiffs worked in excess of forty hours per workweek without being paid overtime compensation.

168.     Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay the Representative Plaintiffs and Collective Class overtime compensation for all of their hours worked in excess of forty per workweek in violation of 29 U.S.C. § 207.

169.     Also, by failing to accurately record, report, and/or preserve records of hours worked by the Representative Plaintiff and Collective Class, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, *et seq*.

170.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation of the Representative Plaintiffs and Collective Class.

171.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

172.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

173.     The Representative Plaintiffs, on behalf of themselves and the Collective Class, seek to recover from Defendants unpaid overtime wages, liquidated damages, attorneys' fees, costs of the action, and post-judgment interest, as provided by the FLSA, 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
**(Overtime Violations under the NJWHL)**
**(On Behalf of the New Jersey Class)**

174.     Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

175.     Pursuant to the applicable provisions of N.J.S.A. 34:11-56a(4), Plaintiff McIntosh and the New Jersey Class were entitled to overtime wages of one and one-half times their regular hourly rate or the applicable minimum wage, whichever is greater, for all hours

worked in excess of forty per week.

176.    Plaintiff McIntosh and the New Jersey Class regularly worked in excess of forty hours per week during their employment with Defendants.

177.    Throughout the relevant period, Defendants knowingly failed to pay Plaintiff McIntosh and the New Jersey Class overtime wages of one and one-half times their regular hourly rate for all hours worked in excess of forty per week.

178.    As a result of Defendants' violations of the law and failure to pay Plaintiff McIntosh and the New Jersey Class the required overtime wages, Plaintiff McIntosh and the New Jersey Class have been damaged and are entitled to recover from Defendants all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

179.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff McIntosh and the New Jersey Class Plaintiffs are entitled to liquidated damages in an amount equal to no less than two-hundred percent of unpaid wages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Straight Time/Minimum Wage Violations under the NJWHL)

### (On Behalf of the New Jersey Class)

180.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

181.    Plaintiff McIntosh and the New Jersey Class are employees entitled to the NJWHL's protections.

182.    Defendants are employers covered by the NJWHL.

183.    The NJWHL provides that employers must pay their employees "at a rate of not less than" the applicable minimum wage. N.J.S.A. 34:11-56a4.

184.    The NJWHL also requires that employers pay employees "for all hours worked." N.J.A.C. 12:56-5.1.

185.    Defendants failure to pay Plaintiff McIntosh and the New Jersey Class for all time worked violates New Jersey law.

### AS AND FOR A FOURTHCAUSE OF ACTION
**(Failure to Timely Pay Wages in Violation of the NJWPL)**
**(On Behalf of the New Jersey Class)**

186.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

187.    At all relevant times, Defendants failed to pay Plaintiff McIntosh and the New Jersey Class the full amount of wages due to them at least twice during each calendar month, on regular paydays designated in advance, in violation of N.J.S.A. 34:11-4.2.

188.    Defendants also failed to pay Plaintiff McIntosh and the New Jersey Class all wages due to them not later than the regular payday for the pay period in which they were terminated, in violation of N.J.S.A. 34:11-4.3.

189.    As a result of Defendants' violations of the law and failure to pay Plaintiff McIntosh and the New Jersey Class Plaintiffs all wages due, including overtime wages and other pay, Plaintiff McIntosh and the New Jersey Class Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid wages, penalties, along with interest and costs.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Failure to Provide Accurate Wage Statements in Violation of the NJWPL)**
**(On Behalf of the New Jersey Class)**

190.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

191.    At all relevant times, Defendants failed to provide accurate and complete wage statements as required by the NJWPL in that the wage statements provided did not include all of the hours actually worked by Plaintiff McIntosh and the New Jersey Class.

192.    As a result of Defendants' violations of the law and failure to provide accurate wage

statements, Plaintiff McIntosh and the New Jersey Class are entitled to recover the penalties specified in the NJWPL.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Improper Deductions from Wages)
### (On Behalf of the New Jersey Class)

193.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

194.    N.J.S.A. 34:11-4.4 provides that: "[n]o employer may withhold or divert any portion of an employee's wages unless: (a) [t]he employer is required or empowered to do so by New Jersey or United States Law."

195.    N.J.SA. 34:11-4.4(b) contains subparts number (1) through (11) which identify the legitimate and lawful circumstances under which an employer may withhold or divert sums from their employees' wages.

196.    None of the subparts in N.J.S.A. 34:11-4.4(b) apply to the claims asserted in this Complaint by the Plaintiff McIntosh and the New Jersey Class.

197.    Defendants took unlawful deductions from Plaintiff McIntosh's and the New Jersey Class's wages by charging them a fee in order to receive payment of their wages.

198.    The NJWHL creates a private cause of action for employees to sue in court for wages claimed to be due. A claim for wages improperly withheld or diverted wages is a claim for non-payment of wages due for which there is a private cause of action under New Jersey statutory law.

199.    As a result of Defendants' unlawful conduct, Plaintiff McIntosh and the New Jersey Class are entitled to an award of damages equal to all wages unlawfully deducted, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### (On Behalf of the New Jersey Class)

200.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

201.    This count only seeks to recover amounts that are not recoverable as wages pursuant to other counts in this Complaint.

202.    At all times relevant to this action, Plaintiff McIntosh and the New Jersey Class had binding contracts with Defendants under which Defendants agreed to pay them for "services actually performed."

203.    Plaintiff McIntosh and the New Jersey Class accepted the terms of Defendants' contractual promises and performed under the contract by performing their duties as directed by Defendants.

204.    Defendants breached their contractual obligation to Plaintiffs by failing to pay them for all time that they devoted to providing services to Defendants.

205.    Plaintiffs are entitled to recover the payments that Defendants promised to make to them.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Overtime Violations under the NYLL)
### (On Behalf of the New York Class)

206.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

207.    Plaintiff Walker and the New York Class are covered, non-exempt employees within the meaning of the NYLL and supporting New York Department of Labor ("NYDOL") Regulations.

208.    Under the NYLL and supporting NYDOL Regulations, Defendants are required to pay Plaintiff Walker and the New York Class one and one half times the regular rate of pay for all hours they worked in excess of forty.

209.    Defendants failed to pay Plaintiff Walker and the New York Class the overtime wages to which they are entitled under the NYLL.

210.    Defendants willfully violated the NYLL by failing to pay Plaintiff Walker and the New York Class overtime wages.

211.    Due to Defendants' willful violations of the NYLL, Plaintiff Walker and the New York Class are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (Wage Notice Violations under the NYLL)
### (On Behalf of the New York Class)

212.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

213.    The NYLL and the Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire.

214.    In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiff Walker and the New York Class at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

215.    Due to Defendants' violations of NYLL §195 (1), Plaintiff Walker and the New York Class are entitled to recover liquidated damages, reasonable attorney's fees and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

**(Wage Statement Violations under the NYLL)**
**(On Behalf of the New York Class)**

216.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

217.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each of the following: the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

218.    As a result of Defendants' violation of the WTPA, Plaintiff Walker and the New York Class are entitled to damages for each week during which the violations occurred.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
**(Unlawful Deductions under the NYLL)**
**(On Behalf of the New York Class)**

219.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

220.    Section 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories of permissible deductions.

221.    Defendants unlawfully required that Plaintiff Walker and the New York Class pay a fee to receive their wages in violation of NYLL §§ 193 and 198(b).

222.    As a result of Defendants' unlawful conduct, Plaintiff Walker and the New York Class are entitled to an award of damages equal to all wages unlawfully deducted, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
**(Breach of Contract)**
**(On Behalf of the New York Class)**

223.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

224.    This count only seeks to recover amounts that are not recoverable as wages pursuant to other counts in this Complaint.

225.    At all times relevant to this action, Plaintiff Walker and the New York Class had binding contracts with Defendants under which Defendants agreed to pay them for "services actually performed."

226.    Plaintiff Walker and the New York Class accepted the terms of Defendants' contractual promises and performed under the contract by performing their duties as directed by Defendants.

227.    Defendants breached their contractual obligation to Plaintiffs by failing to pay them for all time that they devoted to providing services to Defendants.

228.    Plaintiffs are entitled to recover the payments that Defendants promised to make to them.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
**(Overtime Violations under the N.C.G.S.A.)**
**(On Behalf of the North Carolina Class)**

229.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

230.    Plaintiff DeLoatch and the North Carolina Class are covered, non-exempt employees within the meaning of the North Carolina law.

231.    Under N.C.G.S.A. § 95-25.4, Defendants are required to pay Plaintiff DeLoatch and the North Carolina Class one and one half times the regular rate of pay for all hours they worked in excess of forty.

232.    Defendants failed to pay Plaintiff DeLoatch and the North Carolina Class the

overtime wages to which they are entitled under the N.C.G.S.A.

233.    Defendants willfully violated the N.C.G.S.A. by failing to pay Plaintiff DeLoatch and the North Carolina Class overtime wages.

234.    Due to Defendants' willful violations of the N.C.G.S.A., Plaintiff DeLoatch and the North Carolina Class are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

### AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
**(Breach of Contract)**
**(On Behalf of the North Carolina Class)**

235.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

236.    This count only seeks to recover amounts that are not recoverable as wages pursuant to other counts in this Complaint.

237.    At all times relevant to this action, Plaintiff DeLoatch and the North Carolina Class had binding contracts with Defendants under which Defendants agreed to pay them for "services actually performed."

238.    Plaintiff DeLoatch and the North Carolina Class accepted the terms of Defendants' contractual promises and performed under the contract by performing their duties as directed by Defendants.

239.    Defendants breached their contractual obligation to Plaintiffs by failing to pay them for all time that they devoted to providing services to Defendants.

240.    Plaintiffs are entitled to recover the payments that Defendants promised to make to them.

### AS AND FOR A NINETEENTH CAUSE OF ACTION
**(Wage Statement Violations under the NCGSA)**
**(On Behalf of the North Carolina Class)**

241.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

242.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each of the following: the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the N.C.G.S.A. §95-25.13.

243.    As a result of Defendants' violation of the North Carolina wage statement laws, Plaintiff DeLoatch and the North Carolina class are entitled to damages for each week during which the violations occurred.

### AS AND FOR A TWENTIETH CAUSE OF ACTION
**(Failure to Timely Pay Wages in Violation of the NCGSA)**
**(On Behalf of the North Carolina Class)**

244.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

245.    At all relevant times, Defendants failed to pay Plaintiff DeLoatch and the North Carolina Class the full amount of wages due to them at least monthly each calendar month, on regular paydays designated in advance, in violation of N.C.G.S.A. §95-25.6 and §95-25.13.

246.    Defendants also failed to pay Plaintiff DeLoatch and the North Carolina Class all wages due to them not later than the regular payday for the pay period in which they were terminated, in violation of N.C.G.S.A. §95-25.7.

247.    As a result of Defendants' violations of the law and failure to pay Plaintiff DeLoatch and the North Carolina Class Plaintiffs all wages due, including overtime wages and other pay, Plaintiff DeLoatch and the North Carolina Class Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid wages, along with interest and costs.

## AS AND FOR A TWENTY FIRST CAUSE OF ACTION
### (Overtime Violations under the O.R.S.)
### (On Behalf of the Oregon Class)

248.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

249.    Plaintiff Flicker and the Oregon Class are covered, non-exempt employees within the meaning of the O.R.S. and supporting Oregon Regulations.

250.    Under O.R.S. § 653.020, Defendants are required to pay Plaintiff Flicker and the Oregon Class one and one half times the regular rate of pay for all hours they worked in excess of forty.

251.    Defendants failed to pay Plaintiff Flicker and the Oregon Class the overtime wages to which they are entitled under the O.R.S.

252.    Defendants willfully violated the O.R.S. by failing to pay Plaintiff Flicker and the Oregon Class overtime wages.

253.    Due to Defendants' willful violations of the O.R.S., Plaintiff Flicker and the Oregon Class are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees and cost of the action and pre-judgment and post-judgment interest.

## AS AND FOR A TWENTY SECOND CAUSE OF ACTION
### (Breach of Contract)
### (On Behalf of the Oregon Class)

254.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

255.    This count only seeks to recover amounts that are not recoverable as wages pursuant to other counts in this Complaint.

256.    At all times relevant to this action, Plaintiff Flicker and the Oregon Class had binding contracts with Defendants under which Defendants agreed to pay them for "services actually performed."

257.    Plaintiff Flicker and the Oregon Class accepted the terms of Defendants'
contractual promises and performed under the contract by performing their duties as directed by
Defendants.

258.    Defendants breached their contractual obligation to Plaintiffs by failing to pay
them for all time that they devoted to providing services to Defendants.

259.    Plaintiffs are entitled to recover the payments that Defendants promised to make
to them.

### AS AND FOR A TWENTY THIRD CAUSE OF ACTION
#### (Wage Statement Violations under the O.R.S.)
#### (On Behalf of the Oregon Class)

260.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

261.    With each payment of wages, Defendants failed to provide Plaintiffs with a
statement listing each of the following: date of payment, dates of work covered by payment, name
of employee, name and business registry, address and number, rate of rates of pay, whether the
employee is paid by the hour, shift, day or week or on a salary, piece or commission basis, gross
wages, net wages, the amount and purpose of each deduction made during the respective period of
service that the payment covers, allowances, as required by O.R.S. § 652.610 and 652.615.

262.    As a result of Defendants' violation of O.R.S. § 652.610 and 652.615, Plaintiff
Flicker and the Oregon class are entitled to damages for each week during which the violations
occurred, costs, and attorney fees.

### AS AND FOR A TWENTY FOURTH CAUSE OF ACTION
#### (Failure to Timely Pay Wages in Violation of the O.R.S.)
#### (On Behalf of the Oregon Class)

263.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

264.    Defendants failed to pay Plaintiff Flicker and the Oregon Class all wages due to

them after their last day of work as required by O.R.S. §652.140.

265.    Upon information and belief, members of the Oregon Class were not paid all wages earned at the time of their discharge within one business day as required by O.R.S. §652.140.

266.    As a result of Defendants' violations of the law and failure to pay Plaintiff Flicker and the Oregon Class Plaintiffs all final wages according to statute, Plaintiffs have been damages and are entitled to eight times the employee's regular rate of wage for each day that final wages went unpaid, as well as costs, interest, and attorney fees pursuant to O.R.S. §652.150.

**AS AND FOR A TWENTY FIFTH CAUSE OF ACTION**
**Violation of the New Jersey WARN Act**

267.    Plaintiffs incorporate by reference all the allegations in the preceding paragraphs.

268.    At all relevant times, Defendants were an individual or private business entity defined as "employer" under the New Jersey WARN Act and continued to operate as a business until they decided to terminate operations at the Establishment and/or Facility as defined by PL. 2007, c.212, C.34:21-2, as amended.

269.    On or about November 30, 2023 (or within ninety days of that date), Defendants ordered a termination of operations as defined by the New Jersey WARN Act.

270.    The NJ WARN Class Members suffered a termination of employment under the New Jersey WARN Act, having been terminated by Defendants without cause on their part.

271.    Defendants were required by the New Jersey WARN Act to give the NJ WARN Class Members at least 60 days' advance written notice of their terminations.

272.    Defendants failed to give the NJ WARN Class Members written notice that complied with the requirements of the New Jersey WARN Act.

273.    Defendants failed to pay the NJ WARN Class Members their severance equal to at

least one week of pay for each year of employment as required by the New Jersey WARN Act.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

A.       That, at the earliest possible time, Plaintiff be allowed to give notice of this collective

action to the FLSA Collective members. Such notice should inform them that this civil action has been

filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B.       That the Court determine that this action may proceed as a class action under Rule

23(b)(1) and (3) of the Federal Rules of Civil Procedure;

C.       That Defendants is found to have violated the Federal Fair Labor Standards Act as to

the Representative Plaintiffs and the Collective Class;

D.       That Defendants is found to have violated the state laws discussed above as to the

Representative Plaintiffs and the State Wage and Hour Law Classes;

E.       That Defendants are found to have violated the New Jersey WARN Act;

F.       An award to the Representative Plaintiffs and the Collective Class and Rule 23 Class

Members for the amount of unpaid wages owed, unpaid notice and severance pay, including interest

thereon, and penalties, including liquidated damages, subject to proof at trial and the other remedies

sought above;

G.       That Defendants further be enjoined to cease and desist from unlawful activities in

violation of the FLSA and applicable state laws;

H.       That the Representative Plaintiffs and their counsel can adequately represent the

interests of the Class as class representatives and class counsel, respectively;

I.       An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 and/or

other applicable laws;

J.       For such other and further relief, in law or equity, as this Court may deem appropriate

and just; and

K.    That Defendants' violations are deemed to be willful.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury as to all issues so triable.

DATED:  January 30, 2024

Respectfully submitted,
The Law Office of Christopher Q. Davis, PLLC

_____

Nicholas Bittner
Brendan Sweeney (pro hac vice motion to be filed)
Christopher Q. Davis (pro hac vice motion to be filed)
80 Broad Street, Suite 703
New York, New York 10004
Telephone: (646) 430-7930

Attorneys for Plaintiffs and the Proposed
Collective and Classes